**Lucie Allen PEEK, Individually and As Administratrix of the Estate of Clyde Peek, et al., Appellants,**

v.

**EQUIPMENT SERVICES, INC., Appellee.**

No. 04–93–00532–CV.

Court of Appeals of Texas, San Antonio.

May 17, 1995.

Rehearing Overruled Sept. 6, 1995.

Joe B. Stephens, Michael R. Wadler, Stephens & Stephens, L.L.P., Houston, for Appellants.

Ron A. Sprague, R. Matt Lair, Gendry & Sprague, P.C., San Antonio, for Appellee.

Before CHAPA, C.J., and HARDBERGER and DUNCAN, JJ.

## OPINION

CHAPA, Chief Justice.

This is an appeal from a summary judgment granted in favor of appellee Equipment Services, Inc., in a negligence and wrongful death and survival action brought against appellee by the heirs of Clyde Peek, the deceased. The cause of action arose when Marvin Wiley DeBerry, Jr., an officer and employee of appellee, shot and killed Peek. The lawsuit alleged liability under the theories of respondeat superior, failure to control an incapacitated employee, and negligent hiring, supervision, and retention.

The issue before this court is whether the trial court committed reversible error in granting the summary judgment because, appellants contend, fact issues were raised as to:

(1) whether the murder occurred while DeBerry was acting in the scope of his employment with appellee;

(2) whether appellee failed to exercise reasonable control over DeBerry when it should have known that he posed a risk of harm to others; and

(3) whether appellee negligently hired, retained, or supervised DeBerry.

The party moving for summary judgment has the burden of showing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. *Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548 (Tex.1985); Tex.R.Civ.P. 166a(c). In deciding whether a disputed material fact issue precludes summary judgment, the reviewing court will take as true all evidence favoring the nonmovant. *Nixon,* 690 S.W.2d at 548–49; *Montgomery v. Kennedy,* 669 S.W.2d 309, 311 (Tex.1984).

The defendant's burden of proof in a summary judgment is to show as a matter of law that the plaintiff has no cause of action against him. *Citizens First Nat'l Bank v. Cinco Exploration Co.,* 540 S.W.2d 292, 294 (Tex.1976). A defendant may accomplish this by proving that there is no genuine issue of fact as to at least one of the essential elements of the plaintiff's cause of action. *Lear Siegler, Inc. v. Perez,* 819 S.W.2d 470, 471 (Tex.1991).

Initially, we note that the appellee contends without contradiction that most of appellants' controverting summary judgment evidence was untimely, and that the trial court did not consider it.

This contention stems from what occurred on February 16, 1993, when the motion for summary judgment initially was brought to the attention of the trial court. The record reflects that appellee objected to technical defects in appellants' controverting summary judgment evidence, including improper authentication of trial testimony transcripts and depositions, unsigned depositions, and unattached portions of depositions. The trial court granted appellants seven days in which to cure the technical defects, stating: "I am not granting him leave to add any additional summary judgment proof, but just to cure any defects, technical defects that are present in those depositions and transcripts." In addition to failing to contradict appellee's allegations that most of appellants' controverting evidence is untimely, appellants also fail to direct this court to the record establishing what defects, if any, were in fact timely corrected in accordance with the orders of the court.

"This rule [Rule 166a(c)] has been construed to mean that a late filed response is a nullity unless the record affirmatively shows the trial court's acceptance of the late filing." *Pinckley v. Dr. Francisco Gallegos, M.D.,* 740 S.W.2d 529, 532 (Tex.App.—San Antonio 1987, writ denied); *see Johnston v. Vilardi,* 817 S.W.2d 794, 796 (Tex.App.—Houston [1st Dist.] 1991, writ denied). It is presumed that the trial court did not consider a late summary judgment response where no record appears indicating leave to file. *INA v. Bryant,* 686 S.W.2d 614, 615 (Tex. 1985). It will therefore likewise be presumed that the trial court did not consider any defective summary judgment evidence which is not cured within the time prescribed by the court where no record affirmatively shows the trial court's acceptance of the late filing. *Id.; see Pinckley,* 740 S.W.2d at 532.

Here, the appellants do not contend that any defects were cured within the time prescribed by the court, nor are we directed to the record reflecting evidence that the defects were cured. Further, the record does not reflect that the defects were in fact properly cured in a timely manner and in accordance with the orders of the court. We will therefore presume that the trial court did not consider any technically defective summary judgment evidence which was not cured within the seven days permitted by the court on February 16, 1993. We will likewise presume that the trial court did not consider "any additional summary judgment proof" filed after February 16, 1993, in violation of the court's orders.

Appellants contend that the summary judgment was improper because they raised the fact issue that the murder occurred while DeBerry was acting in the scope of his employment.

It is the rule in Texas "that in order to render the master liable for an act of his servant, the act must be committed within the scope of the general authority of the servant in furtherance of the master's business and for the accomplishment of the object for which the servant is employed." *Robertson Tank Lines, Inc. v. Van Cleave,* 468 S.W.2d 354, 357 (Tex.1971). "[W]here the act of the servant is not in the further-

ance of the master's business, or for the accomplishment of the object for which he was employed, but is performed as a resentment of insults, or in the furtherance of personal animosities of the servant, the master is not liable." *Smith v. M System Food Stores*, 156 Tex. 484, 297 S.W.2d 112, 114 (Tex.1957). "It is not ordinarily within the scope of a servant's authority to commit an assault on a third person.... Usually assault is the expression of personal animosity and is not for the purpose of carrying out the master's business." *Texas & P. Ry. Co. v. Hagenloh*, 151 Tex. 191, 247 S.W.2d 236, 239 (Tex.1952).

The appropriate summary judgment evidence which was considered by the trial court disclosed that, without warning, Marvin Wiley DeBerry, Jr., shot and killed Clyde Peek at his place of employment on December 18, 1984. DeBerry was an officer and employee-salesman for appellee Equipment Services, Inc. Clyde Peek was an officer of Browning Ferris Industries, which was a customer of Equipment Services, Inc. The evidence further showed that DeBerry purchased the gun used in the murder on the day of the murder. Although DeBerry had suffered in the past from mental problems, he had never displayed violence or been a threat to anyone, including the deceased, before the day of the shooting. His former wife did indicate that she had felt some threat to herself when they lived together prior to 1984, but felt that he would not consciously harm anyone.

Dr. Victor J. Weiss, DeBerry's treating psychiatrist since the murder, testified that he followed and treated DeBerry on a regular basis. He concluded that it was his medical opinion based on reasonable medical probability that on the day of the murder DeBerry "was insane"; specifically, (1) that DeBerry was "suffering from a severe mental disease," (2) that DeBerry was "operating under an occult delusional system that was a component of his severe mental disease," (3) that "the delusions included his belief that Clyde Peek was associated with the Mafia and that Mr. Peek and his associates in organized crime were out to get or out to destroy DeBerry," (4) that DeBerry "felt

that the act of shooting Peek was the act of getting rid of someone who was trying to destroy him," and (5) "that it was impossible for [Dr. Weiss] to have predicted or foreseen DeBerry's violent actions particularly since DeBerry had not to [his] knowledge made previous threats to Peek." DeBerry was found innocent by reason of insanity at his criminal trial.

Certainly the act of murder under these circumstances could not be considered to have been "in furtherance of the master's business and for the accomplishment of the object for which the servant was employed." *Robertson Tank Lines, Inc.*, 468 S.W.2d at 357. Although DeBerry was an officer in the appellee company, he was primarily employed as a salesman for the purpose of selling items to appellee's customers, including Browning Ferris Industries. Peek was an officer with Browning Ferris Industries. It would stretch reality to conclude that the murder of Peek would somehow accomplish the objective of selling appellee's services to Browning Ferris Industries. As with all assaults, murder "is not ordinarily within the scope of a servant's authority" and is "the expression of personal animosity." *Texas & P. Ry. Co.*, 247 S.W.2d at 239. In this case, the murder was an "expression of personal animosity" brought about by the delusion that Peek and his Mafia associates were out to destroy DeBerry. In shooting Peek, DeBerry was acting for himself in the process of getting rid of someone he believed was trying to destroy him personally. Appellants have failed to raise a fact issue that the murder occurred while DeBerry was acting in the scope of his employment.

Appellants insist, nevertheless, that the issue of whether DeBerry was acting in the scope of his employment was raised by pointing to one statement attributed to Bianca Hunt, a witness to the shooting. Appellants direct this court to a partial trial transcript containing portions of Hunt's trial testimony wherein she allegedly stated that at the time of the shooting she heard DeBerry tell Peek that he had "set him up." However, this is one of the transcripts that the trial court permitted appellants to properly authenticate within seven days. Appellants do not con-

tend that they complied, and the record does not reflect that they did. Instead of properly authenticating the transcript within the seven days as directed by the court, appellants violated the court order by submitting additional summary evidence after the February 16 deadline in the form of an affidavit of Bianca Hunt, and more than seven days thereafter. We must therefore presume that the court did not consider this evidence because it was submitted in violation of the court's order. *INA*, 686 S.W.2d at 615. Nevertheless, even if we were to consider this evidence, it would not reach the level of raising a fact issue as to whether DeBerry was acting in the scope of his employment at the time of the shooting. The point is rejected.

■ Appellants next contend that the summary judgment was improper because they raised the fact issue of whether appellee failed to exercise reasonable control over DeBerry when it should have known that DeBerry posed a risk of harm to others. In *Otis Engineering Corp. v. Clark,* 668 S.W.2d 307 (Tex.1983), the court adopted the following standard:

> Therefore, the standard of duty that we now adopt for this and all other cases currently in the judicial process, is: when, because of an employee's incapacity, an employer exercises control over the employee, the employer has a duty to take such action as a reasonably prudent employer under the same or similar circumstances would take to prevent the employee from causing an unreasonable risk of harm to others. Such a duty may be analogized to cases in which a defendant can exercise some measure of reasonable control over a dangerous person when there is a recognizable great danger of harm to third persons.

*Id.* at 311. However, "before liability will be imposed [upon an employer who has taken control of an employee] there must be sufficient evidence indicating that the defendant knew or should have known that harm would eventually befall a victim. Absent such a showing, a defendant is absolved of liability." *Greater Houston Transp. Co. v. Phillips,* 801 S.W.2d 523, 526 (Tex.1990).

Appellants insist that they carried their burden here by showing that two other officers of appellee knew of DeBerry's mental problems and failed to exercise reasonable control. However, appellants fail to contend that anyone from the appellee corporation ever *took control* of DeBerry, and there is nothing in the proper summary evidence before the court that indicates that anyone on behalf of the appellee considered DeBerry incapacitated enough to require taking control of him.

Appellants point to the criminal trial transcript testimony of DeBerry's former wife Suzanne Cude, who was a pro forma officer of the appellee corporation, in which she acknowledges that DeBerry had mental problems. It is uncontradicted, however, that Cude divorced DeBerry in 1984 and had not lived with him since, that she was an officer in the appellee corporation in name only, and that she had no contact or duties with the corporation in any formal manner. She further indicated that although she may have felt threatened by DeBerry on occasions during the marriage, she never indicated that he was a threat to anyone else, including Peek.

Nevertheless, this evidence is also testimony from the criminal trial transcript which appellants were required to properly authenticate in accordance with the February 16, 1993, order of the court. The appellants fail to contend that they complied with the orders of the court and fail to direct this court to the record showing that they complied, and the record fails to reflect compliance. Therefore, we must presume that the trial court properly did not consider this evidence. *INA*, 686 S.W.2d at 615. Nevertheless, even if we were to consider this evidence, we fail to see how this would raise a fact issue as to whether appellee took control of DeBerry, or should have known that his incapacity presented a danger to others. Dr. Weiss, a qualified psychiatrist, clearly established that even an expert like himself could not have had reason to foresee DeBerry's violence towards Peek.

Appellants also direct this court to the deposition testimony of Fred Kiemstead, another officer of appellee, who noticed that

DeBerry was nervous and sweating on the day of the shooting. Fred Kiemstead, however, merely stated that he had seen DeBerry sweating and nervous on the day of the shooting, and that DeBerry told him he was going to see his doctor. He never testified that there was anything about DeBerry's demeanor that required him to take control of DeBerry or led him to suspect the forthcoming act of violence towards Peek. In fact, his testimony was otherwise. Moreover, as noted previously, psychiatrist Dr. Weiss made it clear that it was not foreseeable that DeBerry would act with violence toward Peek on the day of the shooting. Since appellants failed to raise the issue of fact as alleged, the point is rejected.

Finally, appellants argue that the summary judgment was improper because they raised fact issues as to negligent hiring, retaining, or supervising DeBerry. "The basis of responsibility under the doctrine of negligent hiring is the master's own negligence in hiring or retaining in his employ an incompetent servant whom the master knows or by the exercise of reasonable care should have known was incompetent or unfit and thereby creating an unreasonable risk of harm to others." *Estate of Arrington v. Fields,* 578 S.W.2d 173, 178 (Tex.App.—Tyler 1979, writ ref'd n.r.e.). Although liability under this doctrine

> is not dependent upon a finding that the employee was acting in the course and scope of his employment when the tortious act occurred ... in order to impose liability upon an employer under the doctrine of negligent hiring, there must be evidence that the plaintiff's injuries were brought about by reason of the employment of the incompetent servant and be, in some manner, job-related. Stated another way, the negligence in hiring the employee must be the proximate cause of the injuries to the plaintiff.

*Dieter v. Baker Service Tools,* 739 S.W.2d 405, 408 (Tex.App.—Corpus Christi 1987, writ denied).

 "Negligence, a common law doctrine, consists of three essential elements—a legal duty owed by one person to another, a breach of that duty, and damages proximately resulting from the breach." *El Chico Corp. v. Poole,* 732 S.W.2d 306, 311 (Tex. 1987). Consequently, the failure to establish any one of the essential elements would defeat a cause of action based on negligence. "Duty[1] is the threshold inquiry; a plaintiff must prove the existence and violation of a duty owed to him by the defendant to establish liability in tort ... [and] duty is a function of several interrelated factors, the foremost and dominant consideration being foreseeability of the risk." *Id.*

As heretofore set out, the summary judgment evidence properly considered by the trial court established that the incident was not job related, but the result of an "expression of personal animosity" brought about by the delusion that Peek and his Mafia associates were out to destroy DeBerry. *See Dieter,* 739 S.W.2d at 408. Further, there is no summary judgment evidence that raises the factor of foreseeability of the risk under these circumstances, which is required to establish a duty under the negligence doctrine. *El Chico Corp.* at 311. The point is denied.

The judgment is affirmed.

---

1. In *Otis Engineering Corp.,* the Texas Supreme Court stated that "factors which should be considered in determining whether the law should impose a duty [upon an employer] are the risk, foreseeability, and likelihood of injury weighed against the social utility of the actor's conduct, the magnitude of the burden of guarding against the injury and consequences of placing that burden on the employer." *Otis,* 668 S.W.2d at 309.